## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF ALABAMA

In re

WILLIAM HENRY FEGGINS,                          Case No. 13-11319-WRS

        Debtor

WILLIAM HENRY FEGGINS,

        Plaintiff

v.                                              Adv. Pro. No. 14-1049-WRS

LVNV FUNDING, LLC, AND
RESURGENT CAPITAL
SERVICING, L.P.,

        Defendants

## MEMORANDUM DECISION

These consolidated adversary proceedings[1] are before the Court on the Plaintiffs' motion for award of attorney's fees and costs.[2] (Doc. 90). The Court previously entered judgment for the Plaintiffs on their claims under the Fair Debt Collection Practices Act, but has not yet determined the extent of the Defendants' liability for attorney's fees and costs. <u>Feggins v.</u>

---

[1] The Court consolidated seven separate adversary proceedings filed against Defendants LVNV Funding, LLC and Resurgent Capital Services, L.P. by the following Plaintiffs: William Henry Feggins (AP 14-01049), Ray C. Balcom (AP 14-01060), Robert R. Bryant (AP 14-01061), Donnie L. Chandler (AP 14-01062), Cynthia Gamble Grant (AP 14-01063), Robert W. Henson (AP 14-01064), and Krista R. Oliver (AP 14-01065). (Doc. 18). All of these Plaintiffs were represented in their adversary proceedings by attorney Nick Wooten.

[2] The *Bryant* and *Oliver* adversary proceedings (AP 14-01061 and 14-01065) were dismissed by consent prior to trial. (Doc. 49). These two adversary proceedings are not included in the instant motion.

LVNV Funding, LLC, 540 B.R. 895, 911 (Bankr. M.D. Ala. 2015) ("*Feggins III*"); *see* 15

U.S.C. § 1692k(a)(3).  The Defendants filed an objection to the amount of the fees.  (Doc. 95).

For the reasons set forth below, the Defendants' objection is SUSTAINED IN PART and the

Plaintiffs' motion for attorney's fees and costs is GRANTED IN PART.


## I.  FACTS & PROCEDURAL HISTORY

The Plaintiffs are all debtors with Chapter 13 bankruptcy cases currently pending in this

Court.  The Defendants are debt collectors who filed proofs of claim on facially time-barred

debts in each of the Plaintiffs' underlying bankruptcy cases.  Four of the Plaintiffs objected to

the Defendants' claims on the ground that the statute of limitations had run on the underlying

debts, and the Court sustained each of the objections.[3]  The parties do not dispute that the

underlying debts were time-barred.  (Doc. 52).

On July 10, 2014, the Eleventh Circuit held as a matter of law that the filing of a stale

proof of claim in bankruptcy – *i.e.*, a claim for a debt on which the applicable statute of

limitations has run – by a debt collector violates §§ 1692e and 1692f of the Fair Debt Collection

Practices Act ("FDCPA").  Crawford v. LVNV Funding, LLC, 758 F.3d 1254, 1261 (11th Cir.

2014).  Each of these adversary proceedings were filed soon after in late July of 2014, asserting

---

[3]  Plaintiff Feggins subsequently objected to the Defendants' proof of claim as part of his
adversary proceeding.  (Doc. 1).  The Defendants did not dispute that the debt was time-barred,
and the Court sustained his objection in its trial decision.  Feggins v. LVNV Funding, LLC, 540
B.R. 895, 899 n.2 (Bankr. M.D. Ala. 2015) ("*Feggins III*").

FDCPA violations against the Defendants on the basis of their stale proofs of claim in the Plaintiffs' bankruptcies.[4]

## A. The Motions to Dismiss and to Reconsider

The Defendants promptly moved to dismiss the adversary proceedings, contending that the Court was obligated to dismiss or stay the proceedings under the first-filed rule.  (Doc. 5).[5] The Defendants contended that the Plaintiffs were barred from pursuing their claims independently in this Court because a prior *Crawford*-type FDCPA suit asserting a putative (but uncertified) nationwide class had been filed against the Defendants in the Southern District of Alabama ("the *Brock* class action"); the Defendants argued that the Plaintiffs were members of the *Brock* class action and could not pursue two suits at once.  (Doc. 5).  The Defendants also argued that the cases should be stayed pending disposition of a petition for certiorari to the Supreme Court in *Crawford*.[6]  The Plaintiffs filed a response in opposition, to which the Defendants filed a reply.  (Docs. 11 and 16).  The Court heard oral arguments from counsel at a hearing on September 30, 2014, and denied the Defendants' motion without a written opinion. (Doc. 17).

---

[4] The Defendants in this case were also defendants in *Crawford*, and the parties' counsel in this case were also the counsel in *Crawford*.  The *Crawford* litigation originated in this Court, but the undersigned is not the bankruptcy judge in that case.

[5] The motions to dismiss preceded the Court's order of consolidation and were therefore filed in each of the adversary proceedings; however, they were substantively identical.  The Court will simply cite the *Feggins* docket in this opinion.

[6] The Supreme Court eventually denied certiorari in *Crawford*.  <u>LVNV Funding, LLC v. Crawford</u>, 135 S. Ct. 1844 (2015).

-3-

The Defendants moved to reconsider the denial of their motion, but offered no new evidence or intervening change in the law,[7] and the parties engaged in another round of briefing. (Docs. 21, 25, 32). The Court denied the Defendants' motion to reconsider in a written opinion on December 16, 2014, explaining that the Plaintiffs were not members of the *Brock* class action because no class had been certified in *Brock*. Feggins v. LVNV Funding, LLC, 2014 WL 7185376 (Bankr. M.D. Ala. Dec. 16, 2014) (hereafter "*Feggins I*").

The Defendants filed answers in October 2014 and then amended them, substantively denying all factual allegations and asserting roughly forty affirmative defenses. (Docs. 22, 23, 27, 28).

### B. Motion for Judgment on the Pleadings

On April 30, 2015, the Defendants filed a fifty-eight page motion for judgment on the pleadings. (Doc. 39). Their primary argument was that the Bankruptcy Code precluded the Plaintiffs' FDCPA claims, and relied almost entirely on a holding to that effect in Johnson v. Midland Funding, LLC, 528 B.R. 462 (S.D. Ala. 2015).[8] However, the Defendants also raised five alternative arguments in support of their motion that, upon close inspection, asserted nothing more than that Crawford was wrongly decided by the Eleventh Circuit and was not binding on this Court – notwithstanding the well-established rule that published decisions by the Eleventh Circuit are binding on this Court. (Doc. 39). The Plaintiffs filed a response in opposition to the

---

[7] A motion to reconsider is governed by Rule 59(e) and requires the movant to show an intervening change in the law, consideration of newly discovered evidence, or the need to correct clear error or prevent manifest injustice. In re Danley, 540 B.R. 468, 474 (Bankr. M.D. Ala. 2015).

[8] Johnson has been appealed to the Eleventh Circuit and is scheduled for oral argument in April 2016.

motion, and the Defendants filed a reply to that.  (Docs. 50 and 51).  On August 25, 2015, the

Court issued a written opinion in which it rejected the preclusion holding in Johnson, rejected

the Defendants' other arguments, and denied the Defendants' motion for judgment on the

pleadings.[9]  Feggins v. LVNV Funding, LLC, 535 B.R. 862 (Bankr. M.D. Ala. 2015 (hereafter

"*Feggins II*").

## C.  The Trial

In advance of the trial, the Plaintiffs moved to quash subpoenas that the Defendants had

served on Feggins's bankruptcy attorneys, Michael Brock and Christopher Stanfield, arguing

that the subpoenas were intended solely to inconvenience them and that compliance would be

unduly burdensome.  (Docs. 55).  The Defendants filed a response in opposition.  (Doc. 59).  At

a telephonic hearing on August 6, 2015, the Court heard oral argument from counsel and granted

the motion to quash as to Brock but denied it as to Stanfield.

The Court held a six-hour trial on August 10, 2015.  The Plaintiffs' presentation of their

case-in-chief lasted roughly two minutes, as they established prima facie violations of the

FDCPA with the parties' pre-trial stipulation of facts (Doc. 52), requested statutory damages,

and declined to seek actual damages.[10]  (Doc. 74, pp. 6-7, 11).  At that point, the only issue left

---

[9]  The Court issued *Feggins II* after it conducted the trial in this case but informed the
parties of its decision prior to the trial.

[10]  The FDCPA is a strict-liability statute, so the mere fact that the Defendants filed stale
proofs of claim was sufficient to establish prima facie violations of 15 U.S.C. §§ 1692e and
1692f.  Crawford, 758 F.3d at 1259 n.4.  Debt collectors who violate the FDCPA are subject to
statutory liability of up to $1,000, regardless of whether they actually injured someone.  15
U.S.C. § 1692k(a)(2)(A).

Case 14-01049    Doc 96    Filed 03/17/16    Entered 03/17/16 16:32:27    Desc Main
Document        Page 5 of 22

for the Court to hear factual evidence on was whether the Defendants could assert that their FDCPA violations were the result of a bona fide error.[11]

The Defendants prefaced their own case-in-chief with two motions. First, they moved to dismiss Plaintiff Balcom's case because he failed to appear at the trial, despite having been served by the Defendants with a subpoena. The Court denied the motion because Balcom's testimony was unnecessary to either prove his own case-in-chief or to enable the Defendants to establish a bona fide error. Second, the Defendants filed a motion for judgment on partial findings that mostly rehashed the same legal arguments the Court had rejected in *Feggins I* and *Feggins II*. The Court likewise denied this motion.

Even with Balcom's absence, the Defendants called eight witnesses, seven of whom were not in any position to offer testimony that could possibly help the Defendants establish that their violations were the result of a bona fide error. First, the Defendants called Chapter 13 Trustee Curtis C. Reding, who offered general testimony as to the purposes of bankruptcy and the claims allowance process. (Doc. 74, pp. 19-46). Next, the Defendants called Plaintiffs Feggins, Henson, Chandler, and Grant, and elicited testimony from each of them about whether they were misled by the Defendants' proofs of claims or thought they were unfair. (Doc. 74, pp. 46-108). None of this testimony disproved the Plaintiffs' prima facie showings of FDCPA violations because the FDCPA is a strict-liability statute, and the testimony was wholly irrelevant to

---

[11] Once an objective violation of the FDCPA has been established by a plaintiff, a defendant can escape liability by subjectively proving "that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1692k(c). Obviously, the bona fide error defense involves an inquiry into the defendant's intent, and testimony relevant to that inquiry would most likely be offered by the defendant or the defendant's agents.

whether the Defendants' violations were the result of a bona fide error on the part of the

Defendants. After that, the Defendants called Stanfield and Rafael Gil, who was the bankruptcy

attorney for Balcom, Grant, Henson, and Chandler. (Doc. 74, pp. 108-145). Again, the

testimony offered by the bankruptcy attorneys neither disproved the Plaintiffs' FDCPA cases nor

provided any evidence that could support a bona fide error defense for the Defendants.

Throughout this entire portion of the trial the Defendants did nothing more than use their case-

in-chief as a soapbox to re-argue the merits of Crawford, ignoring the elementary point that this

Court lacks authority to overrule decisions handed down by the Eleventh Circuit.

Finally, the Defendants called Lisa Landreth, a claims manager for Defendant Resurgent

Capital Services, who testified about Resurgent's internal procedures for filing proofs of claim

and for complying with the FDCPA and the Bankruptcy Code. (Doc. 74, pp. 145-157). At the

close of their case-in-chief, the Defendants offered a second motion for judgment on partial

findings that mirrored the legal arguments of their first motion.

In its third written opinion of this litigation, the Court denied the Defendants' motion for

judgment on partial findings, found that the Defendants had violated the FDCPA and had failed

to establish a bona fide error defense, and awarded the Plaintiffs statutory damages of $1,000

each and costs and attorney's fees to be determined. Feggins v. LVNV Funding, LLC, 540 B.R.

895 (Bankr. M.D. Ala. 2015) (hereafter "*Feggins III*"), *appeal docketed* 1:15-cv-00893-WKW

(M.D. Ala. Dec. 3, 2015).

### D.  The Motion for Attorney's Fees

The Plaintiffs have moved for an award of attorney's fees and costs in the amount of

$46,458.55 for the consolidated adversary proceedings. (Doc. 90). Plaintiffs' counsel Nick

Wooten ("Wooten") avers he has spent a total of 119.8 hours on this litigation and asserts a reasonable billing rate of $350 per hour. (Doc. 90). Wooten also claims that his paralegal has spent 34.3 hours on this litigation and requests compensation of $125 per hour for her work. (Doc. 90). Plaintiffs support their motion with a declaration of Wooten's experience and billing rate and with itemized bills from Wooten for each of their cases, with the lion's share of the billing occurring in *Feggins*. (Doc. 90).

The Defendants have filed a lengthy response in opposition, attacking both the reasonableness of Wooten's billing rates and the number of hours he billed. (Doc. 95). Specifically in regards to the number of hours billed, the Defendants assert that the litigation was not complex, that Wooten billed for redundant and unnecessary work, that Wooten improperly billed for clerical work, and that Wooten has engaged in "block-billing." (Doc. 95).

## II. ANALYSIS

This Court has "related to" jurisdiction pursuant to 28 U.S.C. §§ 1334(b) and 157(a), and the District Court's General Order of Reference dated April 25, 1985. The Plaintiffs' FDCPA claims are not core proceedings, but the Defendants have impliedly consented to final judgment by this Court through their litigation conduct. Feggins III, 540 B.R. at 900. This is a final order.

A debt collector who violates the FDCPA is liable, "in the case of any successful action to enforce the foregoing liability, [for] the costs of the action, together with a reasonable attorney's fee as determined by the court." 15 U.S.C. § 1692k(a)(3). For FDCPA cases, the "'initial estimate of a reasonable attorney's fee is properly calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.'" Hollis v.

Roberts, 984 F.2d 1159, 1161 (11ᵗʰ Cir. 1993) (per curiam) (quoting Blum v. Stenson, 465 U.S. 886, 888 (1984)).  Known as the lodestar, the Eleventh Circuit also favors consideration of the twelve factors set out in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5ᵗʰ Cir. 1974), in making this determination.  Bivins v. Wrap It Up, Inc., 548 F.3d 1348, 1350 (11ᵗʰ Cir. 2008) (per curiam).

The lodestar "may then be adjusted for the results obtained."  Loranger v. Stierheim, 10 F.3d 776, 781 (11ᵗʰ Cir. 1994).  "If the result was excellent, then the court should compensate for all hours reasonably expended.  If the result was partial or limited success, then the lodestar must be reduced to an amount that is not excessive."  Norman v. Housing Auth. of City of Montgomery, 836 F.2d 1292, 1302 (11ᵗʰ Cir. 1988) (internal citation omitted).  Also, exceptional results can justify enhancement of the lodestar.  Id. (citing Pennsylvania v. Del. Valley Citizens' Council for Clean Air, 478 U.S. 546, 565 (1986)).  "Exceptional results are results that are out of the ordinary, unusual, or rare."  Id.  Enhancement based on exceptional results requires "specific evidence in the record to show that which one would reasonably expect in light of the rates claimed."  Id.

## A.  Reasonable Hourly Rate

"A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation."  Id. at 1299.  "The party seeking attorney's fees bears the burden of producing 'satisfactory evidence that the requested rate is in line with prevailing market rates.'"  Loranger, 10 F.3d at 781 (quoting Norman, 836 F.2d at 1299).  "[A] movant may meet his burden by producing either direct evidence of rates charged under similar circumstances or opinion evidence of reasonable

-9-

rates." Duckworth v. Whisenant, 97 F.3d 1393, 1396 (11th Cir. 1996) (emphasis removed).

Also, the Court "'is itself an expert on the question and may consider its own knowledge and

experience concerning reasonable and proper fees and may form an independent judgment either

with or without the aid of witnesses as to value.'" Norman, 836 F.2d at 1303 (quoting Campbell

v. Green, 112 F.2d 143, 144 (5th Cir. 1940)). Finally, the lodestar rate "may be enhanced based

on risk of non-recovery . . . or delay in receipt of payment." Grant v. George Schumann Tire &

Battery Co., 908 F.2d 874, 880 (11th Cir. 1990).

Plaintiffs request a rate of $350 per hour for Wooten's work.[12] Wooten has practiced law

for seventeen years, with a focus on bankruptcy and consumer law litigation, and has

successfully litigated scores of cases before this Court. (Doc. 90). As the plaintiff's attorney in

Crawford, it would not be an exaggeration to say that Wooten has helped to forge the law on

which this case is based.

Although $350 per hour is more than the Court would normally allow to a senior attorney

in Wooten's field ($250 to $300 per hour), the Court has awarded $350 per hour to Wooten

before in a case that mirrors this one in many respects. See Parker v. Credit Cent. South, Inc. (In

re Parker), 515 B.R. 337, 351 (Bankr. M.D. Ala. 2014). That award was based on certain

enhancements to the lodestar calculation, but the Court finds that the same enhancements are

warranted in this case. First, "[a] court may enhance the fee if there is a risk of non-recovery and

if counsel shows that 'such enhancement is necessary to assure the availability of counsel.'"

---

[12] In asking for $350 per hour, the Plaintiffs invite the Court to consider the "Laffey Matrix" as a reasonable comparison for an attorney of Wooten's skill and experience. (Doc. 90, Ex. A). The Court declines to do so. The relevant market for determining a reasonable rate "is that of the place where the case is filed." Cullens v. Georgia Dept. of Transp., 29 F.3d 1489, 1494 (11th Cir. 1994).

Grant, 908 F.2d at 880 (quoting Norman, 836 F.2d at 1302). The Plaintiffs are all debtors in Chapter 13 bankruptcy and will almost certainly be unable to pay Wooten unless they recover their attorney's fees from the Defendants, so Wooten has incurred significant risk in pursuing this case. The undesirability of these cases, due to the risk involved for plaintiff attorneys and the inability of their clients to directly pay them, is apparent from the paucity of attorneys (Wooten and a couple others) who have filed these cases in this Court.

The Defendants argue that "[i]f your 'market' is a consumer plaintiff, and you charge so much money that the consumer-plaintiff cannot afford to hire you, then you are not charging the 'market' rate." (Doc. 95, p. 8). Such reasoning is without merit. First, the FDCPA's provision of statutory damages reflects Congress's determination that violations of the FDCPA rarely cause actual harm to the victims, but should still be deterred. Since the maximum a FDCPA plaintiff can hope to recover in most cases is $1,000, it would not be economically feasible for that plaintiff to hire an attorney for more than a few pennies per hour, which no attorney would agree to work for. Second, even when significant actual damages are warranted, these Plaintiffs are in bankruptcy and by definition insolvent, unable to pay an attorney anything. Thus, the Defendants' argument would eviscerate § 1692k(a)(3) and enforcement of the FDCPA, enabling the Defendants and their ilk to prey on financially distressed victims with impunity.

The second basis for enhancement of Wooten's fee rate is the delay he faces in getting paid. Because the Plaintiffs are reliant on recovery of their fees from the Defendants, they will be unable to pay Wooten until the Defendants satisfy the judgment. Given the course of this litigation so far Wooten has worked for twenty months without getting paid. With an appeal currently pending he will likely face a much longer delay in payment. In light of these

-11-

considerations, the Court concludes that $350 per hour is a reasonable rate for the work Wooten has performed on behalf of the Plaintiffs in this case.

The Plaintiffs have also requested $125 per hour for work done by Wooten's paralegal, to which the Defendants likewise object. As averred by the Defendants, the standard billing rate for paralegal work in this district is $95 per hour. (Doc. 95, p. 10). Again, the Court has previously allowed Wooten $125 per hour for work done by his paralegal, but did so with reservations. *See* Parker, 515 B.R. at 351. In this case, the Plaintiffs have offered no evidence of the paralegal's qualifications or experience and do not justify her rate by any means except a comparison to the "Laffey Matrix," which the Court will not consider. *Supra* note 12. Because the Plaintiffs have failed to justify a higher rate for Wooten's paralegal, the Court will award them $95 per hour for her work.

### B. Hours Reasonably Expended

"The next step in the computation of the lodestar is the ascertainment of reasonable hours." Norman, 836 F.2d at 1301. Attorney's fee applicants must exercise "billing judgment," which means "'excessive, redundant or otherwise unnecessary' hours should be excluded from the amount claimed." Id. (quoting Hensley v. Eckerhart, 461 U.S. 424, 434 (1983)). "Excluding excessive or otherwise unnecessary hours under the rubric of 'billing judgment' means that a lawyer may not be compensated for hours spent on activities for which he would not bill a client of means who was seriously intent on vindicating similar rights, recognizing that in the private sector the economically rational person engages in some cost benefit analysis." Id. "Because reducing the hours claimed requires the court's precision, . . . both the proof of the hours spent in litigation and any corresponding objections posed [must] be voiced with a similar exactitude."

-12-

Duckworth, 97 F.3d at 1397. When a court "finds the number of hours claimed is unreasonably high, the court has two choices: it may conduct an hour-by-hour analysis or it may reduce the requested hours with an across-the-board cut." Bivins, 548 F.3d at 1350.

The Plaintiffs request compensation for 119.8 hours of work done by Wooten and 34.3 hours of work done by his paralegal. (Doc. 90). The Defendants have raised a number of objections to the hours billed, which the Court will consider in turn.

### 1. Complexity of the Litigation

The Defendants first argue that Wooten's billing is excessive in this case because the facts were straightforward and undisputed. They specifically highlight the 22.3 hours Wooten billed for preparing the Plaintiffs' response to their motion for judgment on the pleadings. (Doc. 95, p. 14). Wooten billed 5.3 hours for reviewing the Defendants' motion, 8.2 hours for research and for drafting the Plaintiffs' response, 4.2 hours for editing the response and for more research, and 4.6 hours for final edits of the response. The Defendants argue that because Wooten served as plaintiff's counsel in *Crawford*, he should have already been very familiar with the legal issues in this case. In effect, the Defendants argue that Wooten is billing in this case for work he did in *Crawford*. This argument is without merit.

The Defendants have made, by the Court's count, the following legal arguments a total of twenty-six separate times in this case: (a) Plaintiffs cannot sue individually because of the first-filed rule, (b) the Bankruptcy Code precludes the FDCPA, (c) Crawford is not binding on this Court, (d) the Defendants did not violate the FDCPA because the bankruptcy estate is not a consumer or a natural person, (e) the least sophisticated consumer standard should not apply, (f) the Defendants' proofs of claim were not deceptive or unfair, (g) the Plaintiffs are being

inequitable by snookering the Defendants into filing stale claims and then alleging FDCPA

violations, (h) Crawford should not be applied retroactively, and (i) Plaintiffs' claims are barred

by res judicata.[13] Only the preclusion and res judicata arguments had any serious merit; the

others were foreclosed by the Eleventh Circuit's decision in Crawford and other well-settled law.

*See* Feggins III, 540 B.R. at 906-11; Feggins II, 535 B.R. at 865-66. However, the Defendants

made these arguments repeatedly despite the Court's clear and unequivocal rejection of them,[14]

and presented them in a very prolix and meretricious manner,[15] wasting both Wooten's time and

the Court's time.[16] Yet the Defendants are now outraged that the Plaintiffs have the temerity to

seek compensation for the time Wooten was forced to spend refuting these arguments. In taking

this position, the Defendants are engaging in the worst kind of hypocrisy. They have stubbornly

litigated as if the Eleventh Circuit's Crawford decision never happened, and now want to

attribute Wooten's work in defending against their fatuous arguments to that same decision.

---

[13]  Noticeably absent was the FDCPA's bona fide error defense – a valid affirmative defense to the Plaintiffs' claims that the Defendants never expressly raised, but that the Court charitably considered on their behalf anyway in *Feggins III*. *See* 540 B.R. at 903-06.

[14]  The Defendants justify their persistence in raising these arguments by noting that the standard of review became more favorable to them as the litigation progressed. The Court rejects this justification. The Plaintiffs' bankruptcy cases contained crystal-clear evidence of prima facie FDCPA violations (stale proofs of claim) that were readily accessible to the parties and the Court at all times throughout this litigation, and the Defendants never introduced new evidence to the contrary.

[15]  The brevity with which the Court disposed of the Defendants' non-preclusion arguments in *Feggins II* belies the tediousness with which they were presented. *Compare* Feggins II, 535 B.R. at 875-76, *with* (Doc. 39, pp. 16-57).

[16]  The fact that the Defendants' counsel was also the defendants' counsel in *Crawford* – and likewise knowledgeable of the legal issues – makes the Defendants' conduct in this litigation and their argument here all the more galling.

The Defendants posit that if their legal arguments were so lacking in merit, the Plaintiffs should have moved for summary judgment and saved the expense of a trial. The Defendants speculate that the Plaintiffs did not because such a motion would have been futile due to questions of fact regarding the merits of the Plaintiffs' claims (*i.e.*, whether FDCPA violations occurred). The Defendants are correct that it would have been futile for the Plaintiffs to move for summary judgment, but for the wrong reason. The FDCPA is an objective, strict liability statute that allows for a subjective affirmative defense. Crawford, 758 F.3d at 1259 n.4. The bona fide error defense is not available to a defendant as a sword to seek dismissal, *see* Holloway v. Am. Infosource, L.P., 538 B.R. 137, 142-43 (Bankr. M.D. Ala. 2015), but it *is* available as a shield to survive a plaintiff's motion for summary judgment. However, most of the Defendants' legal arguments and efforts at trial were directed not toward presenting a bona fide error defense, but rather toward attacking the merits of the Plaintiffs' FDCPA claims on the front end. In light of Crawford, the undisputed factual record, and the objective basis on which FDCPA violations are determined, the Defendants' efforts toward this end *were* futile.

This should have been a fairly simple case: Plaintiffs file a complaint, Defendants move to dismiss (or for summary judgment) on preclusion and res judicata, and after the Court denies the motion the Defendants answer, proceed to trial, and present a bona fide error defense. Or, given how little was at stake in these cases ($1,000 each) relative to the potential attorney's fees, the Defendants could have simply offered to settle them.[17] Instead the Defendants have waged a

---

[17] The Defendants protest they should not be penalized for not settling this case. Quite true, but that does not entitle them to escape liability for the Plaintiffs' attorney's fees when the Defendants litigate and lose. That is the whole point of a fee-shifting statute. Moreover, there is a distinct difference between raising a measured, valid defense, and asserting a bunch of frivolous legal gobbledygook as the Defendants have done throughout this case.

war of attrition, engaging in conduct designed to harass and inconvenience the Plaintiffs. Throughout this litigation the Defendants have sought to waste Wooten's time, so now they can pay him for it too. The Court will overrule the Defendants' objection to the hours Wooten billed for responding to the motion for judgment on the pleadings, insofar as their objection rests on a lack of complexity in the litigation.

### 2. Trial and Pre-Trial Motions

The Defendants take issue with the time Wooten has billed for researching and drafting the Plaintiffs' motion to quash the subpoena on attorneys Brock and Stanfield, and for his review of the parties' joint stipulation of facts.

Wooten billed 5.2 hours for researching and drafting the motion to quash, which was five pages long, cited just one case, and basically argued that the subpoenas on Brock and Stanfield should be quashed because their testimony would be irrelevant. (Doc. 55). Although in hindsight the motion probably should have been granted in its entirety, the quality of the motion itself does not justify such a large number of hours. The Court concludes that 1.5 hours were reasonable for researching and drafting the motion to quash, and will permit the Plaintiffs to recover for that amount of time.

Wooten also billed 2.4 hours for reviewing the parties' joint pre-trial statement of facts (Doc. 52), which the Defendants aver was drafted by their counsel and accepted by Wooten with no changes. (Doc. 95, Ex. D). The time-barred nature of the Defendants' proofs of claim would be the primary facts that Wooten would have needed to confirm, and he would have already needed to do that before the Plaintiffs filed their complaints. The Court agrees that 2.4 hours are

-16-

not reasonable for reviewing the pre-trial statement of facts, and will permit Plaintiffs to recover for 0.5 hours on this entry.

The Defendants also challenge Wooten's billing entries for trial preparation, arguing that Wooten's conferring with clients and preparing documents were unnecessary in light of the Plaintiffs' decision to rest on the record at trial. The Defendants' argument is not well-taken. To begin with, Wooten needed to conduct some trial preparation because of the possibility that the Defendants would assert a bona fide error defense. Also, the Defendants decided to subpoena the Plaintiffs to testify at trial, so it is perfectly reasonable that Wooten would prepare them to testify. The Court will permit the Plaintiffs to recover for the time Wooten has billed for trial preparation as filed.

However, though not challenged by the Defendants, the Court will not allow Plaintiffs to recover for Wooten's travel time to and from trial. Wooten's law office was located in Auburn, Alabama at the start of this litigation, but while the case was pending Wooten moved his office to Little Rock, Arkansas. Wooten billed 8 hours at $350 per hour to drive to Montgomery from Little Rock, and then billed another 8 hours to drive back to Little Rock. If a paying client hires a local lawyer to file a case locally and then the lawyer moves far away while the case is pending, the client would justifiably balk at being charged for the lawyer's round-trip travel time to show up at trial.[18] The Court will disallow the 16 hours Wooten has billed for driving to and from Montgomery for trial.

_____

[18] Even without the circumstance of a lawyer moving during litigation, billing $350 per hour to drive that far to trial is unreasonable unless that has been bargained for in advance.

-17-

### 3. Excessive, Redundant, & Other Unnecessary Hours

The Defendants allege that Wooten has redundant billing entries for time his paralegal spent drafting the complaints and preparing and filing the summons in the separate adversary proceedings prior to consolidation. The Court disagrees.[19] "Redundant hours generally occur where more than one attorney represents a client." Norman, 836 F.2d at 1301-02. This is not a situation where multiple attorneys are performing duplicative work for the same client and each billing for their full time, but rather a single attorney (or his paralegal) performing similar work multiple times for multiple clients – and only once per client. Repetition is not redundancy. Also, while the legal arguments are the same for each complaint, the underlying facts are not. The Court has carefully reviewed these entries and finds them to be reasonable.

The Defendants also challenge as excessive the 1.4 hours Wooten billed to write the Plaintiffs' motion to consolidate and the 0.4 hours he billed to review the Court's October 24, 2014 scheduling order. The Court agrees. The motion to consolidate is nothing more than a short recitation of the facts and procedural postures of the adversary proceedings, and the scheduling order is two pages long and reflects the Court's standard scheduling practices for discovery and trial. The Court concludes that 0.7 hours are reasonable for preparing the motion to consolidate and 0.1 hours are reasonable for reviewing the scheduling order.

Finally, the Defendants assert that Wooten and his paralegal have redundantly billed for reviewing the Defendants' reply brief on their motion for judgment on the pleadings and comparing it to the original motion. Wooten billed 3.2 hours for this and his paralegal billed 1

---

[19] The Defendants separately challenge some of these same entries as clerical. The Court will consider this argument in Part II(B)(4).

hour for the same work. The Court agrees that this work was redundant and that Wooten's time is excessive.[20] The Court will disallow the paralegal's entry and allow the Plaintiffs to recover for 2 hours for Wooten's review of the reply brief.

### 4. Clerical Work

The Defendants have identified numerous entries by Wooten's paralegal, and a couple by Wooten himself, as non-compensable clerical work. (Doc. 95, pp. 19-21). Paralegal expenses are recoverable "only to the extent that the paralegal performs work traditionally performed by an attorney. Otherwise, paralegal expenses are separately unrecoverable overhead expenses." Allen v. U.S. Steel Corp., 665 F.2d 689, 697 (5th Cir. Unit B 1982).[21] Likewise, "a fee applicant is not entitled to compensation at an attorney's rate simply because an attorney undertook tasks which were mundane, clerical or which did not require the full exercise of an attorney's education and judgment." Norman, 836 F.2d at 1306.

The descriptions of the entries the Defendants have flagged as clerical include the following: (a) "set up file," (b) "finalize and efile 9007 application and declaration," (c) "return final version of complaint to document management," (d) "efile complaint, exhibits, and summons," (e) "update file with efiled docs," (f) "efile summons serviced executed," and so on. The Court agrees that each of these entries are for non-compensable clerical work. Wooten has

---

[20] It is possible that Wooten and his paralegal reviewed separate parts of the reply brief, but the Court cannot conclude from the entries that this was what happened. If they reviewed distinct parts of the brief, they should have each specified the parts of the brief they reviewed.

[21] Decisions issued by a Unit B panel of the former Fifth Circuit are binding on this Court. Stein v. Reynolds Sec., Inc., 667 F.2d 33, 34 (11th Cir. 1982).

-19-

billed 0.5 hours and his paralegal has billed 6 hours for clerical work.  The Court will not permit the Plaintiffs to recover for these entries.

### 5.  Block-Billing

Finally, the Defendants complain of numerous instances of "block-billing" in Wooten's bill.  (Doc. 95, pp. 21-23).  "'Block billing' occurs when an attorney lists all the day's tasks on a case in a single entry, without separately identifying the time spent on each task."  Ceres Envtl. Servs., Inc. v. Colonel McCrary Trucking, LLC, 476 Fed. Appx. 198, 203 (11th Cir. 2012) (per curiam).  "The imprecision" caused by block-billing can "make[] it difficult, if not impossible, to calculate with any precision the number of hours an attorney devoted to a particular task in th[e] litigation."  ACLU of Georgia v. Barnes, 168 F.3d 423, 429 (11th Cir. 1999).  Because defendants should not be penalized for imprecise block-billing by plaintiffs' attorneys, id., some courts have found it necessary to apply across-the-board reductions to such billing entries.  E.g., Ceres Envtl. Servs., 476 Fed. Appx. at 203; Mock v. Bell Helicopter Textron, Inc., 456 Fed. Appx. 799, 802 (11th Cir. 2012) (per curiam); Wolff v. Royal Am. Mgmt., Inc., 2012 WL 5303665, *5 (S.D. Ala. Oct. 25, 2012).

Wooten and his paralegal have lumped multiple tasks on some entries, but have not rendered those entries so imprecise as to warrant a reduction.  For example, the paralegal billed 0.5 hours to "work on response to [the motion to dismiss]; email draft to [Wooten] to complete argument."  The email would not take more than a couple of minutes, leaving at least 0.4 hours for working on the response to the motion – an entry the Court finds to be reasonable.  Some "block-billed" entries contain internal explanation: for example, the 3 hours Wooten billed to "attend hearing on motion to dismiss AP[;] includes one hour drive time each direction and one

hour in court time." Clearly that means Wooten drove 1 hour to court, spent 1 hour in court, and drove 1 hour back from court. Also, some activities are of such a nature that they can be, or even must be, performed simultaneously, and "there may be inefficiencies in requiring counsel to break down their daily activities more completely[.]" Ceres Envtl. Servs., 476 Fed. Appx. at 203. For example, Wooten billed 0.8 hours to "review, edit and finalize Plaintiff's Rule 26(a)(3) disclosures." There is no requirement that billing entries be limited to one verb apiece.

By comparison, some of the entries in Wolff that warranted a reduction "contain[ed] more than a half-page of single-spaced text, and . . . contain[ed] as many as a couple dozen tasks." Wolff, 2012 WL 5303665 at *5. Similarly, the billing entries in Ceres "routinely included half a dozen or more separate tasks . . . and were peppered with vague language such as . . . 'continuing work on case.'" Ceres Envtl. Servs., 476 Fed. Appx. at 203. The entries that the Eleventh Circuit complained of in Barnes "often lump[ed] together all the tasks performed by an attorney on a given day. . . ." Barnes, 168 F.3d at 429. None of the billing entries highlighted by the Defendants approach that level of imprecision. The Court will not make any reductions for block-billing.

### C. Lodestar Summary

The Plaintiffs request compensation for 119.8 hours of work done by Wooten at $350 per hour and 34.3 hours of work done by his paralegal at $125 per hour. (Doc. 90). The Court has determined that $350 per hour is a reasonable rate for Wooten and $95 per hour is a reasonable rate for his paralegal. The Court has deducted 24.3 hours Wooten billed for and 7 hours his paralegal billed for, resulting in a determination that Wooten reasonably spent 95.5 hours and that his paralegal reasonably spent 27.3 hours working on this litigation. Multiplying those

numbers results in a lodestar of $33,425 for Wooten and $2,593.50 for his paralegal – a total lodestar of $36,018.50.  Considering the results obtained in this case, the Court concludes no adjustment of the lodestar is necessary.  The Court will award the Plaintiffs $36,018.50 in attorney's fees.

### D.  Costs

In addition to Wooten's attorney's fees, the Plaintiffs seek compensation for $241.05 in costs.  (Doc. 90).  The Defendants have raised no objection to this, so the Court will allow the Plaintiffs to recover that amount in costs.

## III.  CONCLUSION

Pursuant to 15 U.S.C. § 1692k(a)(3), the Plaintiffs are entitled to recover $36,259.55 from the Defendants, consisting of $36,018.50 in attorney's fees and $241.05 in costs.  The Court will enter a separate order consistent with this opinion.

March 17, 2016.


William R. Sawyer
Chief U.S. Bankruptcy Judge